UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 06-60694 |
| KATHLEEN SUE HUNTER, | CHAPTER 7 |
| Debtor. | JUDGE RUSS KENDIG |
| | ADV. NO. 07-6114 |
| ANNE PIERO SILAGY, | |
| Plaintiff, | |
| v. | |
| | **MEMORANDUM OF OPINION** |
| CORINNE MARZILLI et al., | **(NOT INTENDED FOR** |
| Defendants, | **PUBLICATION)** |

Now before the Court is the Motion for Summary Judgment filed by Plaintiff Anne Piero Silagy, Chapter 7 trustee ("Trustee") with this court on April 11, 2008. Plaintiff filed the instant motion under Fed. R. Bankr. P. 7056, which incorporates Fed R. Civ. P. 56 into bankruptcy practice. Trustee initiated the instant adversary proceeding on July 12, 2007 seeking to avoid an alleged eve of bankruptcy transfer from Debtor Kathleen Hunter ("Debtor") to either her sister, Corinne Marzilli, or her sister-in-law, Kathleen Marzilli. After extensions, Defendants filed their joint answer on December 4, 2007. Trustee filed the instant motion on April 11, 2008. Defendants filed their memorandum in opposition on April 22, 2008. Plaintiff filed a reply brief on April 28, 2008, and Defendants filed their sur-reply on May 1, 2008.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(H). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

**BACKGROUND AND PROCEDURAL POSTURE**

This case primarily involves retracing the history of a Social Security Disability (SSD) lump-sum settlement check in the amount of $13,163.00. Social Security issued the check to

Debtor on January 3, 2006. Debtor deposited the money into her draft account at Stark Federal Credit Union (SFCU). The same day, she transferred $10,000 from that account to her shares account, also at SFCU. Before this infusion, the balance in that account was $5.00.

Two days later, on January 5, 2006, $2,796.59 of the money in her shares account was garnished by a third-party creditor, Great Seneca Financial. Debtor has alleged that this was a garnishment of social security income and was thus illegal; Debtor has scheduled a claim for $2797.00 against Great Seneca Financial as an asset of her estate under item 35 on her Schedule B.

The legality or illegality of this garnishment is not currently an issue before this Court. However, in response to this garnishment, on February 15, 2006, Debtor withdrew $7,203.00 from her Stark Federal Credit Union account and transferred $7000.00 of this money to Kathleen Marzilli. On February 23, 2006, Kathleen Marzilli opened two separate accounts with that money in her name at SFCU, one checking and one savings.

Debtor filed her petition on May 5, 2006. She declared $7000.00 as the total of funds in two Stark Federal Credit Union accounts on item 2 of her Schedule B. She also claimed an exemption of $800.00 in "SSI benefits" in addition to her $973.00 monthly SSD income.

Corinne Marzilli received no funds from Kathleen Hunter. Her inclusion as a defendant in this case appears to have been the result of a misstatement by Debtor's at a 341 meeting, at which she identified Corinne Marzilli rather than Kathleen Marzilli as the recipient of Debtor's money. Corinne has sworn that she did not receive the money (Aff. of Corinne Marzilli), Kathleen Marzilli has sworn that she did (Aff. of Kathleen Marzilli), Kathleen Hunter has now sworn that it was in fact Kathleen Marzilli, not Corinne, that was the recipient. (Aff. of Kathleen Hunter 1.) For the remainder of this opinion, "Marzilli" and "Defendant" refer to Kathleen Marzilli only.

## LEGAL ANALYSIS

### I. Standard of Review

Motions for summary judgment are governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56. That rule provides, in part:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes

v. S.H.Kress & Co., 398 U.S. 144, 158-59 (1970). Summary judgment is not appropriate if a material dispute exists over the facts, "that is, if evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## II. The Transfer and Return

### A. The Prima Facie Case Necessary to Activate § 548(a)(1)

This much can be said as a matter of law at this juncture: Within two years before the date of the filing, Debtor voluntarily transferred $7000.00 to Defendant with the intent to frustrate creditors, arguably a prima facie violation of 11 U.S.C. § 548(a)(1)(A), albeit in the good faith belief that the money was exempt from seizure by those creditors. Section 548(a)(1)(A) empowers the trustee to avoid any transfer of an interest in the debtor in property made within two years before the petition date if the debtor made such transfer with "actual intent to hinder, delay, or defraud" any creditor. The operative clause is disjunctive; it may well be that Debtor had no intent to defraud any creditor, but the intent to hinder or delay is sufficient. Hunter's affidavit states that she transferred the money "as a result of an illegal garnishment" (Hunter Aff. 1); Marzilli's affidavit states that she accepted the funds "on a temporary basis to avoid further garnishments of Social Security Benefits received by Kathleen Sue Hunter." (Marzilli Aff.) The funds were undeniably exempt; therefore, the Court questions whether one can "hinder or delay" a creditor from attempting to take something which the creditor is not permitted to take, exempt funds. Clearly, Debtor had the right to keep the funds, regardless of the legality of any creditor's claim. The Court need not resolve this issue for the reasons set forth hereafter.

### B. Issues of Material Fact Remain Regarding Defendant's Affirmative Defenses

Therefore, the Court turns to Defendant's counterargument that a transfer is not subject to avoidance if made in good faith and for value. Defendant cites Chorost v. Grand Rapids Factory Showrooms, Inc., 77 F.Supp. 276 (D.N.J. 1948), aff'd, 172 F.2d 327 (3rd Cir. 1949); the Court begins with the current statutory basis of this proposition, 11 U.S.C. § 548(c), which provides that

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Defendant argues that all monies were returned to Debtor, that no funds were ever used by the transferees for their own purposes, and that no creditor was ever defrauded. Numerous factual

ambiguities preclude a finding to this effect, however. The most significant (but hardly the only) such issue is the lack of any documents showing the balance in the draft account in Marzilli's name after April 3, 2006.

Debtor's Schedule B declares $7000.00 total in two accounts at Stark Federal Credit Union. However, Trustee has raised credible doubts about the accuracy of this information, and Debtor's Schedules raise more. For example, Debtor only claimed an exemption of $800.00 in accumulated SSI assets (in addition to the $973.00/month) on her Schedule C. Nearly three months passed between when Defendant established the accounts at SFCU and when Debtor filed her petition; it strains credibility to suggest that the balance in the account was still $7000.00 at that time even accepting Defendant's story at face value. The partial statements of account that Debtor provided to Trustee also reflect that withdrawals were being made from these accounts well before the petition date: the balance in the shares account had fallen from $3000.00 to $2372.49 by May 5, 2006, and the balance the draft account had fallen from $4000.00 to $3479.02 by April 3, 2006; the statement reaches the end of a page at that point and no subsequent pages have been provided, so the Court cannot ascertain what the balance was on May 5, 2006, when the petition was filed, nor on July 12, 2007, when the adversary was filed. There is no credible chance that the balance as of May 5, 2007 equaled exactly enough (i.e., more money had been deposited) to make the total in the two accounts $7000.00 at the petition date, however, which makes Debtor's Schedule B almost certainly inaccurate on this point.

The $800.00 figure claimed for Social Security assets is doubly perplexing. First, given that Debtor declared the $7000.00 (specifically labeling it "all SSD") on her Schedule B, it is unclear why Debtor would attempt to exempt only $800.00. Conversely, Debtor also specified the law providing for the exemption as Ohio Rev. Code Ann. § 2329.66(A)(18); that section provides, both now and at the time of filing, for a generic exemption of up to $400.00 in any property. Why Debtor would attempt to exempt $800.00 worth of property under this section is additionally confusing.

In addition, the records provided by Trustee show that Defendant was still paying bills for the address listed as Debtor's address in her petition as of January 2008, though the bills are addressed to "Joseph Marzilli" at that address. Trustee notes that this reflects money coming to Debtor, not Debtor's estate. The Court also notes that, while the records are not complete records from May 5, 2006 onward, they actually appear to suggest a total of bills paid on Debtor's behalf *above* $7000.00. The rent listed on the bills from Kolp Real Estate alone is $600.00 per month. Furthermore, the bills only reflect that bills addressed to Joseph Marzilli at Debtor's declared address were being paid. However, these documents do not show whence the money to pay those bills came. The bank statements provided show that the shares account in Kathleen Marzilli's name was fully depleted by April 10, 2007, and every significant withdrawal was a cash withdrawal, all save the first one and the last two in increments of $10.00, suggesting the use of an ATM card. The draft account's status after April 3, 2006 remains unascertainable, but the total of the bills submitted (all dated in 2007 and later) alone is more than was in the account at that time, compelling the conclusion that most of these bills were paid from other accounts, not the ones containing the $7000.00 at issue in this case.

### III. Waiver of Exemption

Perhaps the most critical issue in this case, however, is the legal issue of whether Debtor's transfer of SSD income to her sister-in-law voided its characterization as SSD income and therefore voided the otherwise applicable exemption. The Trustee urges the Court to follow the absolute rule of In re Ziegler, 20 B.R. 449 (Bankr. S.D. Ohio 1982). In Ziegler, the court held that any voluntary relinquishment of a property interest prepetition waived any exemption that might have been claimed in that property under 11 U.S.C. § 522(g) if that transfer is subsequently avoided by the trustee. This Court, however, shares the reservations regarding the Ziegler court's unqualified rule that Judge Speer expressed in Hunter v. Snyder (In re Snyder), 108 B.R. 150 (Bankr. N.D. Ohio 1989), and holds that to the extent that the funds were returned to the Debtor while circumstances did not suggest an impending recovery action by Trustee, their character as Social Security benefits remained unabrogated and the Debtor had not forfeited her right to claim the relevant exemption for those funds.

> Section 522(g) of the Bankruptcy Code provides that
>
> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if--
>
> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and
>
> (B) the debtor did not conceal such property; or
>
> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

11 U.S.C. § 522(g). Significantly, as written, the statute speaks only of recovery in the present tense. The statute applies to property the trustee recovers, not merely to property that he could recover. In Snyder, the trustee prevailed because the trustee had already filed the avoidance action when the transferees reconveyed the real property at issue; the court rejected the argument that a formal judicial determination was required to trigger the prohibition in § 522(g) against the exemption of voluntarily transferred property. However, the Snyder court proceeded:

> This does not mean that equitable considerations can never be a factor in allowing a debtor to exercise an exemption in property which has been previously voluntarily conveyed. This Court does not subscribe to the Ziegler position that all that is required to prevent exemption is the initial voluntary conveyance of the property. The language of § 522(g) requires that the trustee, or a creditor acting in a similar capacity, have taken some action which has resulted in the recovery of the property.

Snyder, 108 B.R. at 154. This Court agrees with Judge Speer's analysis. The trustee need not have gotten a court order avoiding the transfer nor even have filed a formal adversary proceeding to recover the property in question, but "some action" to recover the property is necessary before § 522(g) will operate to deny a debtor an exemption in voluntarily transferred but reconveyed property. See, e.g., Glass v. Hitt (In re Glass), 60 F.3d 565, 569 (9th Cir. 1995) (homestead exemption denied when transferee only reconveyed property to debtor after trustee objected to homestead exemption and informed debtor that he intended to seek avoidance of the transfer as a fraudulent conveyance).

Debtor transferred the Social Security money to Defendant sometime between February 15 and 23, 2006. She filed her petition on May 5, 2006. This adversary proceeding was filed on July 12, 2007, a gap of more than fourteen months from the filing date and nearly seventeen months since the date Defendant gradually began to reconvey the money to Debtor. To the extent that this money was voluntarily reconveyed to Debtor before circumstances indicated that action to recover the property by Trustee was pending, Debtor's right to exempt the money is unaffected by § 522(g). The Court cannot categorically hold that Debtor retained the right to exempt the entire $7000.00 because nothing in the record indicates when the money was fully reconveyed to Debtor (i.e., when the draft account was depleted), nor when Defendant or Debtor first became aware that Trustee was preparing to bring an action to avoid the transfer. However, both the present-tense language of § 522(g) and the equitable considerations in this case lead the Court to adopt the rule of Snyder, not Ziegler.

An order in accordance with this opinion will be entered contemporaneously.

/s/ Russ Kendig
RUSS KENDIG
U.S. BANKRUPTCY JUDGE

**Service List**:

Gregory J Rufo
The Rufo Law Firm
900 Chase Tower
101 Central Plaza S
Canton, OH 44702

Bruce R Schrader, II
John J. Rutter
Roetzel & Andress
222 S Main St
Suite 400
Akron, OH 44308